1

2

3

4

5                                        *E-FILED - 3/24/10*

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                      FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   CHARLES ALVIN HOLLOMON,            )      No. C 07-1285 RMW (PR)
                                        )
12                                      )      ORDER DENYING PETITION
                       Petitioner,      )      FOR WRIT OF HABEAS
13        vs.                           )      CORPUS; DENYING
                                        )      CERTIFICATE OF
14                                      )      APPEALABILITY
     JAMES E. TILTON, et al.            )
15                                      )
                       Respondents.     )
16   _____)

17        Petitioner, a state prisoner proceeding pro se, filed a petition for writ of habeas

18   corpus pursuant to 28 U.S.C. § 2254.  The court ordered respondent to show cause why the

19   amended petition should not be granted.  Respondent has filed an answer addressing the merits

20   of the amended petition.  Petitioner filed a traverse.  Having reviewed the briefs and the

21   underlying record, the court concludes that petitioner is not entitled to relief based on the claims

22   presented and denies the petition.

23                                       **BACKGROUND**

24        Petitioner was convicted of second degree robbery after a jury trial in Marin County

25   Superior Court.  (Resp. Ex. E, (People v. Holloman, California Court of Appeal, First Appellate

26   District, Case No. A108035, Jan. 18, 2006) at 1.)  The evidence at trial included testimony by the

27   bank teller victim, surveillance photos from the bank security cameras, photo line-up results in

28   which petitioner was identified at the robber, expert testimony identifying the handwriting on a

1    demand note as written by petitioner, and evidence that petitioner had deposited a large amount

2    of money matching the denominations taken from the bank into his own bank account just a few

3    hours after the robbery.  (Id.)  Petitioner was sentenced to a term of 35 years to life.

4         On direct appeal, the state appellate court affirmed petitioner's conviction and sentence

5    on January 18, 2006.  (Id.)  The state supreme court denied a petition for review on April 12,

6    2006.  (Resp. Ex. G.)  Thereafter, the instant petition was filed on March 5, 2007.

7    **DISCUSSION**

8    **A.**    <u>**Standard of Review**</u>

9         This court may entertain a petition for writ of habeas corpus "in behalf of a person in

10   custody pursuant to the judgment of a state court only on the ground that he is in custody in

11   violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

12   Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court

13   may not grant a petition challenging a state conviction or sentence on the basis of a claim that

14   was reviewed on the merits in state court unless the state court's adjudication of the claim

15   "(1) resulted in a decision that was contrary to, or involved an unreasonable application of,

16   clearly established federal law, as determined by the Supreme Court of the United States; or (2)

17   resulted in a decision that was based on an unreasonable determination of the facts in light of the

18   evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  The first prong applies

19   both to questions of law and to mixed questions of law and fact, <u>Williams v. Taylor</u>, 529 U.S.

20   362, 384-86 (2000), while the second prong applies to decisions based on factual determinations,

21   <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

22        "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

23   court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

24   law or if the state court decides a case differently than [the] Court has on a set of materially

25   indistinguishable facts."  <u>Williams</u>, 529 U.S. at 412-13.  A state court decision is an

26   "unreasonable application of" Supreme Court authority, falling under the second clause of

27   § 2254(d)(1), if the state court correctly identifies the governing legal principle from the

28   Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's

1  case." Id. at 413.  The federal court on habeas review may not issue the writ "simply because

2  that court concludes in its independent judgment that the relevant state-court decision applied

3  clearly established federal law erroneously or incorrectly." Id. at 411.

4          Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination

5  will not be overturned on factual grounds unless objectively unreasonable in light of the

6  evidence presented in the state-court proceeding." Miller-El, 537 U.S. at 340.  The court must

7  presume correct any determination of a factual issue made by a state court unless the petitioner

8  rebuts the presumption of correctness by clear and convincing evidence.  See 28 U.S.C. §

9  2254(e)(1).

10         In determining whether the state court's decision is contrary to, or involved an

11 unreasonable application of, clearly established federal law, a federal court looks to the decision

12 of the highest state court to address the merits of a petitioner's claim in a reasoned decision.

13 LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  Here, the opinion of the California

14 Court of Appeal is the last reasoned opinion to address petitioner's claims.

15 **B.     Petitioner's Claims**

16         As grounds for federal habeas relief, petitioner alleges: (1) his Sixth Amendment right to

17 the effective assistance of counsel was denied based upon the trial court's denial of his Marsden[1]

18 motions on the ground that he and counsel were embroiled in an irreconcilable conflict; and (2)

19 his Fourteenth Amendment right to a fair trial was violated based upon the denial of effective

20 assistance of counsel.  After reviewing the state court record and the arguments petitioner

21 actually raised in the state courts, this court concludes that what initially looked like two separate

22 claims is actually one: whether petitioner was denied the effective assistance of counsel due to

23 an irreconcilable conflict, and therefore, a fair trial, when the trial court denied his Marsden

24 motions.  Having re-framed the petitioner's allegation at issue, the court will address it below.

25         1.     State proceedings

26         At trial, petitioner raised five Marsden motions.  The first, July 8, 2004, occurred during

27

28         [1]  People v. Marsden, 2 Cal.3d 118 (1970).

1   jury selection.  (RT 93.)  Petitioner indicated to the court that he wanted to "fire" his attorney

2   because he was not consulting with Petitioner about which potential jurors should and should not

3   be excused.  (Id. at 97.)  Petitioner believed that he was entitled to personally choose at least five

4   jurors and counsel disagreed with him on his choices.  (Id.)  Counsel responded that petitioner

5   had been writing notes to counsel during jury selection and that counsel was taking his thoughts

6   into consideration.  (Id. at 97-98.)  Further, counsel indicated that he had only excused two jurors

7   out of ten or thirteen that petitioner had given his input on.  (Id. at 98.)  Counsel concluded that

8   although he welcomed petitioner's thoughts, as long as he was representing petitioner, counsel

9   was going to select the jury.  (Id. at 102.)  The court suggested that petitioner rely on counsel's

10  expertise, noting that the alternative was self-representation, which the court counseled against.

11  (Id. at 103.) The court stated that counsel agreed to listen to petitioner and get his input, but that

12  counsel was in charge of jury selection.  (Id. at 103-04.)

13      The next day, July 9, 2004, after the jurors were sworn and the court was giving

14  preliminary instructions, petitioner stated in open court that he wanted to make a Marsden

15  motion and submitted a pleading.  (Id. at 121-22.)  Whereupon, the court excused the jury and

16  admonished petitioner not to make such statements in front of the jury.  (Id. at 122.)  The court

17  described the motion as appearing as if it was some sort of form pleading, and then asked

18  petitioner to specify exactly what counsel has done or not done that caused petitioner concern.

19  (Id. at 127.)  Petitioner reiterated that counsel had excused potential jurors that petitioner wanted

20  to keep.  (Id. at 128-29.)  The court noted petitioner's "unhappiness" with counsel, and again

21  concluded that it believed counsel's action were appropriate.  (Id. at 129-30.)  The court

22  reminded petitioner not to make outbursts in front of the jury because the jury could view that as

23  problematic.

24      Later that day, during the direct examination of bank employee Natalia Piachonkina, the

25  court admonished petitioner in open court to keep his voice down.  (Id. at 224.)  Petitioner

26  responded, "I'm not holding down nothing.  I'm not -- . . . [counsel's] working with the D.A.

27  He's talking with the D.A.  When you leave out of here, the son of a bitch is talking to the D.A."

28  (Id. at 224-25.)  After the court excused the jury, the court warned petitioner again that it would

1    not allow further outbursts in front of the jury. Petitioner apologized and stated that he was

2    frustrated because he had no legal defense. (Id. at 229.) Petitioner added that counsel has

3    objected once to the responses from four prosecution witnesses and has not cross-examined any

4    of them. (Id.) Counsel responded that he explained to petitioner that none of the witnesses'

5    testimony thus far had been inconsistent with the defense theory. (Id. at 232.) Counsel stated

6    that petitioner's outbursts undermined the defense even though petitioner had indicated earlier

7    that he would refrain from more outbursts. (Id.) The court allowed petitioner and counsel to

8    discuss matters in private before returning to the bench. (Id. at 234-35.) When the court

9    returned, petitioner assured it that he would have no more outbursts in open court and that he

10   was okay to proceed. (Id. at 235.)

11   On July 13, 2004, petitioner made his fourth Marsden motion. (Id. at 290-92.) Petitioner

12   wanted to know why the prosecution could call witnesses to say things but petitioner was not

13   allowed to say anything. (Id. at 291-92.) Petitioner also claimed that he wanted counsel to bring

14   up a point or two but there was no guarantee that counsel would comply. (Id. at 296-97.)

15   However, petitioner conceded that he did not have an example of that occurring because he had

16   not yet indicated any points that he wanted raised. (Id. at 297.) Petitioner also indicated that he

17   wished to testify on his own behalf even against counsel's advice. (Id. at 299.) Counsel

18   requested a recess to consult with petitioner. (Id. at 299-300.) After the break, trial resumed.

19   Later that day, petitioner made his fifth and final Marsden motion after the prosecution

20   finished its direct examination of its handwriting expert. (Id. at 342.) After the jury was

21   excused, petitioner stated that he wanted either himself or counsel to cross-examine the expert.

22   (Id. at 347.) Petitioner wanted to challenge the expert's conclusions that certain letters and

23   words from the bank robbery note matched petitioner's handwriting. (RT 347-49.) Counsel

24   responded that there was an appropriate time to ask questions and make statements and, although

25   he had explained the process to petitioner several times, petitioner appeared to want something

26   more. (Id. at 350-52.) After more discussion, petitioner agreed that he probably should have

27   written down his suggestions to counsel. (Id. at 353-54.) Petitioner added that he agreed with

28   counsel's approach as well as his overall tactics, but he just wanted counsel to challenge more

1    things.  (Id. at 355-56.)

2          On direct appeal, the California Court of Appeal rejected petitioner's claims.  (Resp. Ex.

3    E.)  The Court summarized that petitioner's issues with counsel concerned tactical decisions --

4    i.e., jury voir dire and cross-examination of prosecution witnesses.  (Id. at 4.)  The Court also

5    noted that the record reflected that petitioner agreed with counsel's overall approach to the case

6    and conceded that they worked together.  (Id.)  The Court went on to state that petitioner's

7    occasional outbursts in front of the jury also did not warrant substitution of counsel because any

8    harm that came from those outbursts was a product of petitioner's own conduct.  (Id.)  The Court

9    concluded that the record did not demonstrate a complete breakdown in the attorney-client

10   relationship.  (Id. at 4-5.)

11         2.     Analysis

12         A criminal defendant who cannot afford to retain counsel has no right to counsel of his

13   own choosing.  Wheat v. United States, 486 U.S. 153, 159, 164 (1988).  Nor is he entitled to an

14   attorney who likes and feels comfortable with him.  United States v. Schaff, 948 F.2d 501, 505

15   (9th Cir. 1991).  The Sixth Amendment guarantees effective assistance of counsel, not a

16   "meaningful relationship" between an accused and his counsel.  Morris v. Slappy, 461 U.S. 1,

17   14 (1983).  The denial of an indigent criminal defendant's motion for substitution of counsel

18   may nevertheless violate his Sixth Amendment right to counsel.  See Daniels v. Woodford, 428

19   F.3d 1181, 1197-98 (9th Cir. 2005).  To compel a criminal defendant to undergo a trial with the

20   assistance of an attorney with whom he has become embroiled in irreconcilable conflict is to

21   deprive the defendant of any counsel whatsoever.  Id. at 1197.

22         An irreconcilable conflict violates the Sixth Amendment only when there is a complete

23   breakdown in communication between the attorney and the client and the breakdown prevents

24   the effective assistance of counsel.  Schell, 218 F.3d at 1026.  The Ninth Circuit has held that

25   when a defendant voices a seemingly substantial complaint about counsel, the trial judge should

26   make a thorough inquiry into the reasons for the defendant's dissatisfaction.  Bland v. California

27   Dep't of Corrections, 20 F.3d 1469, 1475-76 (9th Cir. 1994), overruled on other grounds by

28   Schell, 218 F.3d at 1025.  In determining whether the trial judge should have granted a

1   substitution motion, the reviewing habeas court may consider the extent of the conflict, whether

2   the trial judge made an appropriate inquiry into the extent of the conflict, and the timeliness of

3   the motion to substitute counsel.  Daniels, 428 F.3d at 1197-98.

4          Regardless of whether the state court failed to rule on the motion to substitute counsel or

5   denied the motion, the ultimate inquiry in a federal habeas proceeding is whether the petitioner's

6   Sixth Amendment right to counsel was violated.  Schell v. Witek, 218 F.3d 1017, 1024-25 (9th

7   Cir. 2000) (en banc).  That is, a federal habeas court considers whether the trial court's denial of

8   the motion "actually violated [petitioner's] constitutional rights in that the conflict between

9   [petitioner] and his attorney had become so great that it resulted in a total lack of communication

10  or other significant impediment that resulted in turn in an attorney-client relationship that fell

11  short of that required by the Sixth Amendment."  Id. at 1026.  If a serious conflict resulted in the

12  constructive denial of counsel, no further showing of prejudice is required and the petitioner's

13  trial is presumed to have been unfair.  Id. at 1027.  But if a serious conflict did not rise to the

14  level of a constructive denial of counsel, the petitioner must prove that he was prejudiced by the

15  conflict.  Id. at 1028.

16         Here, applying the factors to determine whether the denials of the substitution of counsel

17  were proper, the court concludes that they were.  The extent of the conflicts were disagreements

18  with counsel's tactical decisions at trial.  Petitioner's first two Marsden motions challenged

19  counsel's decisions on jury selection.[2]  Petitioner's remaining Marsden motions expressed his

20  desire for counsel to cross-examine prosecution witnesses or to challenge their testimony.  Both

21  jury selection and witness questioning are matters of trial strategy.  See, e.g., Dows v. Wood,

22  211 F.3d 480, 487 (9th Cir. 2000) ("counsel's tactical decisions at trial, such as refraining from

23  cross-examining a particular witness or from asking a particular line of questions, are given great

24

25         [2] Although petitioner's petition complains that the trial court neglected to address the
26  other written complaints about counsel in his second Marsden motion, this court disagrees.
    A review of the trial transcript demonstrates that the trial court noted petitioner's written motion
27  appeared to be a "form" motion. (RT 127.)  Thereafter, the trial court asked petitioner to clarify
    what his problems were.  (Id.)  In response, petitioner complained only about counsel's jury
28  selection.  (Id.)

1   deference and must similarly meet only objectively reasonable standards"); <u>Denham v. Deeds</u>,

2   954 F.2d 1501, 1505 (9th Cir. 1992) (concluding that counsel's choice in jury selection may

3   have been tactical decision); <u>Hughes v. United States</u>, 258 F.3d 453, 457 (6th Cir. 2001) (counsel

4   accorded "particular deference" in jury selection); <u>Fox v. Ward</u>, 200 F.3d 1286, 1295 (10th Cir.

5   2000) (counsel's actions during voir dire presumed to be matters of trial strategy).  The Ninth

6   Circuit has clearly stated that disagreements over trial tactics do not rise to the level of a Sixth

7   Amendment violation.  <u>See</u> <u>Stensen v. Lambert</u>, 504 F.3d 873, 886 (9th Cir. 2007).  In addition,

8   the trial transcript shows that there was not a breakdown in communication because petitioner

9   continued to give his input to counsel via written notes during trial and conceded that they were

10  working together.

11          Further, the trial court appropriately inquired into the extent of the conflict.  <u>See</u> <u>Daniels</u>,

12  428 F.3d at 1197-98.  After each motion, the court excused the jury and the prosecutor and asked

13  petitioner to explain what his concerns were.  After petitioner expressed his dissatisfaction, the

14  court allowed counsel to respond.  The court considered both petitioner's and counsel's views,

15  and each time, satisfied itself that communication between the two had not broken down to the

16  point where it was irreconcilable.  The trial court advised petitioner more than once that counsel

17  would listen to what petitioner wanted, but that counsel was in charge of tactical decision-

18  making.  At the end of the last <u>Marsden</u> hearing, petitioner even conceded that he, in fact, agreed

19  with counsel's overall tactics and decisions, but disagreed on the approach.

20          Finally, the timeliness of the motions weigh against petitioner.  The first <u>Marsden</u> motion

21  was made during jury selection and likely would have required a continuance if granted.  <u>Cf.</u>

22  <u>United States v. McClendon</u>, 782 F.2d 785, 789 (9th Cir. 1986) ("It is within the trial judge's

23  discretion to deny a motion to substitute made during or on the eve of trial if the substitution

24  would require a continuance.").

25          The record demonstrates that the trial court properly denied petitioner's <u>Marsden</u>

26  motions.  Thus, petitioner cannot show that he was constructively denied the effective assistance

27  of counsel.  Furthermore, even assuming that there was a serious conflict between petitioner and

28  counsel, petitioner does not even attempt to show how he was prejudiced.  <u>See</u> <u>Schell</u>, 218 F.3d

1  at 1028.

2        Accordingly, the court concludes that state court's rejection of petitioner's claim of a

3  denial of effective assistance of counsel and a fair trial due to irreconcilable conflict was not

4  contrary to, or an unreasonable application of, Supreme Court authority, nor was it based upon

5  an unreasonable application of the facts in light of the evidence presented.  28 U.S.C. § 2254

6  (d)(1), (2).

7  **C.**     **Certificate of Appealability**

8        The federal rules governing habeas cases brought by state prisoners have recently been

9  amended to require a district court that denies a habeas petition to grant or deny a certificate of

10  appealability ("COA") in its ruling.  See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C.

11  foll. § 2254 (effective December 1, 2009).  For the reasons set out in the discussion above,

12  petitioner has not shown "that jurists of reason would find it debatable whether the petition states

13  a valid claim of the denial of a constitutional right [or] that jurists of reason would find it

14  debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel,

15  529 U.S. 473, 484 (2000). Accordingly, a COA is DENIED.

16                                    **CONCLUSION**

17        For the foregoing reasons, the petition for a writ of habeas corpus and COA are DENIED.

18  The Clerk shall enter judgment for respondent and close the file.

19        IT IS SO ORDERED.

20  Dated:    3/23/10

21                                    RONALD M. WHYTE
                                      United States District Judge

22

23

24

25

26

27

28